UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

JANKO ENTERPRISES, INC.					PLAINTIFF

v.								CIVIL ACTION NO.3:12-CV-345-S

LONG JOHN SILVER'S, INC., et al.				DEFENDANTS

## ORDER

This matter is before the Magistrate Judge to consider two discovery motions (DN 42, 60). Both motions are filed by the Plaintiff, Janko Enterprises, Inc. (Janko), a Florida corporation owned by Sandra and Robert Jankovich. The first motion of Janko is a motion to compel discovery responses (DN 42, Motion to Compel). The motion, as originally filed, seeks to compel adequate responses to interrogatory nos. 17 and 18, and request for production of documents nos. 1, 2 and 3 of Janko's first set of discovery requests served on March 8, 2013.[1] The Defendants, Long John Silver's, Inc., Yum! Brands, Inc., and LJS Partners, LLC, have filed a response in opposition to the motion to compel (DN 50, Response). Janko has filed a reply (DN 59), which it seeks leave for the Court to accept out of time (DN 60, Motion to File Out of Time). Accordingly, the substance of the motion to compel is now ripe for consideration.

Janko's two interrogatories now in dispute request the following information:

> 17. State the date that Yum! Brands, Inc. made the decision to divest itself and/or sell its ownership interest in Long John Silver's, Inc., and state the reasons why said divestment decision was made.
>
> 18. State the date that Yum! Brands, Inc. began negotiations with LJS Partners, LLC (or its owners) to sell Yum!'s ownership interest in Long John Silver's, Inc.

---

[1] Janko indicates in its reply (DN 59, Reply) that the parties have resolved their dispute with respect to document request nos. 1 and 2 based on supplemental discovery requests and responses served after the initial motion to compel.

(DN 42, Ex. 1, Interrogatories, pp. 15-16, ¶¶17-18). Defendants made an identical objection to both interrogatories. In each case, they responded:

> ANSWER: Defendants specifically object to interrogatory no. 17 [18] because it seeks highly proprietary information that is not relevant to the subject matter involved in the pending action and that is not reasonably calculated to lead to the discovery of admissible evidence.

(Id.). Request for production no. 3 also addressed the same subject and sought "all documents pertaining to the decision of Yum! Brands, Inc. to divest itself of all Long John Silver's, Inc. restaurants." (DN 42, Ex. 1, Request p. 28, ¶ 3). Defendants responded with the same objection that the documents sought are highly proprietary and not relevant nor reasonably calculated to lead to the discovery of admissible evidence. (Id.). Efforts by the parties to informally resolve their dispute, along with supplemental discovery requests and responses, have failed to resolve the ongoing dispute.

*Legal Analysis.*

The first question the Court addresses is whether the information and documents sought fall within the understanding of relevancy set forth in the Civil Rules. The scope of discovery is set out in Rule 26(b)(1) of the Federal Rules of Civil Procedure. The Rule explicitly states that a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense...." Fed. R. Civ. P. 26(b)(1). It is well established by now that this language is broadly construed by the federal courts to include "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)). *See also, Schlagenhauf v. Holder*, 379 U.S. 104, 114-115 (1964)

2

("Discovery rules are to be accorded a broad and liberal treatment ... to effectuate their purpose that 'civil trials in the federal courts no longer need be carried out in the dark.'") (quoting *Hickman*, 392 U.S. at 501).

Sixth Circuit federal district courts have echoed the same viewpoint in various published decisions over the years. *See In re Richardson-Merrell, Inc.*, 97 F.R.D. 481, 483 (S.D. Ohio 1983) (Rule 26(b) to be accorded broad and liberal treatment). *Dunn v. Midwestern Indemnity*, 88 F.R.D. 191, 194-195 (S.D. Ohio 1980) ("The general discovery provisions of the Federal Rules of Civil Procedure are to be liberally construed."); *Laufman v. Oakley Building & Loan Co.*, 72 F.R.D. 116, 120-121 (S.D. Ohio 1976) (same). In fact, this Court previously has written on the broad scope of discovery in *Invesco Institutional (N.A.), Inc. v. Paas*, 244 F.R.D. 374, 380-381 (W.D. Ky. 2007). *See also, Groupwell Int'l (HK), Ltd. v. Gourmet Exp., LLC*, 227 F.R.D. 348, 358-359 (W.D. Ky. 2011) (discussing *Invesco*).

What the cited decisions confirm is that the scope of inquiry permitted by Rule 26(b)(1) is significantly broader than that permitted at trial. *See Mellon v. Cooper-Jarrett, Inc.*, 424 F.2d 499, 500-501 (6th Cir. 1970) (discussing the scope of discovery in the context of a deposition). When faced with questions over, or disputes about, what information or documents may be obtained based on their relevancy, it is axiomatic that the trial court is afforded broad discretion to determine the boundaries of inquiry. *Chrysler v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981), *cert. denied*, 454 U.S. 893 (1981). *See also, Schism v. United States*, 316 F.3d 1259, 1300 (Fed. Cir. 2002) ("The court has broad discretion in determining the scope of discovery and in setting limits."). Absent a clear abuse of the trial court's discretion, its decisions regarding the scope of discovery will not be disturbed on review. *Chrysler Corp.*, 643 F.2d at 540; *Chemical*

3

*& Industry Corp. v. Druffel*, 301 F.2d 126, 129 (6th Cir. 1962) ("Under the rules, the extent of discovery and the use of protective orders is clearly within the discretion of the trial judge.").

Ordinarily, once the relevancy of the requested information or documents sought by a party is established, then the focus of the court will fall on whether sufficient reasons are offered by the responding party to justify withholding these items from disclosure. The nature of the responding party's duty in such circumstances has been described by this Court previously:

When the discovery material sought appears to be relevant, the party who is resisting production has the burden to establish that the material either does not come within the scope of relevance or is of such marginal relevance that the potential harm resulting from production outweighs the presumption in favor of broad disclosure. *Horizon Holdings, LLC v. Genmar Holdings, Inc.*, 209 F.R.D. 208, 211-212 (D.Kan. 2002). A party who seeks to avoid disclosure of requested materials "bears a heavy burden of demonstrating that disclosure will work a clearly defined and very serious injury..." *Empire of Carolina, Inc. v. Mackle*, 108 FRD. 323, 326 (S.D.Fla, 1985) (citing *Citicorp v. Interbank Card Association*, 478 F.Supp. 756 (S.D.N.Y. 1979)). Courts generally do not grant protective orders without a strong showing of good cause, and the burden of establishing good cause falls on the party who seeks such an order. *Howard v. Galesi*, 107 F.R.D. 348, 350 (S.D.N.Y. 1985) (citing 8 Charles Alan Wrights & Arthur Miller, *Federal Practice & Procedure\*,* §2035 (1st ed. 1970)). *See also, Cipollone v. Liggett Group, Inc.* 106 F.R.D. 573 (D.N.J. 1985) ("The party seeking a protective order under this section bears the burden of proving its necessity.").*Invesco*, 244 F.R.D. at 380.

The two interrogatories and the document request at issue easily satisfy the standard for relevancy set forth in Rule 26(b)(1) when one examines the claims set forth in Janko's second amended complaint (DN 47). Without reciting those claims in full, the complaint alleges that in

4

2006, the Plaintiffs, in an effort to obtain a Taco Bell franchise, were provided information by the Defendant Yum! about franchising opportunities involving Long John Silver's, KFC and A&W (DN 47, Second Amended Complaint, p. 3, ¶10). The Jankoviches allege that in the spring of 2006, a representative of Long John Silver's and Yum! provided them with financial information on the sales revenue of two franchisees that showed a yearly profit of over a million dollars for each (Id., ¶11). Mrs. Jankovich attended a "Discovery Day" at Yum! the following month where she claims that she was told that Yum! was putting all of its efforts into promoting the concept of a combined Long John Silver's and A&W outlet or LAW unit, and that Yum! was putting millions of dollars, into research, development and marketing of such co-branded stores (Id., ¶12).

     Mrs. Jankovich further claims she was told at the event that LAW franchisees would be trained without additional cost in company-owned LAW stores, and that the combined LAW units would make specified levels of revenue. Subsequently, a Yum! representative, Matthew Bisignano, visited Sandra Jankovich in Titusville, Florida, where he took her to various company-owned franchise stores that he represented were making at least $1 million or more in annual revenues. That summer, Defendants Yum! and Long John Silver's forwarded her a Uniform Franchise Offering Circular (UFOC) for co-branded Long John Silver's and A&W restaurants. Plaintiffs claim that as a result of the above representations made at Discovery Day during Bisignano's visit and in the UFOC, they became a franchisee of a LAW unit in February of 2007, and made preparation to obtain space for the future LAW restaurant in Titusville, Florida, by leasing commercial property and taking steps to obtain a building permit.

     The Jankoviches continue in their second amended complaint to allege that more than 26 months then passed, however, before the company would approve the building layout and

blueprints that had been supplied by Long John Silver's. During this time, according to the Jankoviches, Yum! and Long John Silver's failed to provide the financial documents that Janko needed to obtain approval for construction loans, which resulted in Janko losing its initial financing. Further, they claim that within the first 18 months of the execution of the franchise agreement, Yum! and Long John Silver's ordered an internal "hold" on all Long John Silver's projects while the company-owned Long John Silver's restaurants were being sold off and Yum! and Long John Silver's were determining whether or not Long John Silver's would be sold due to its nonprofitability.

      The couple additionally claim that they have recently learned that Yum! and/or Long John Silver's did not like the construction site they chose with the result that following the initial approval for construction plans, Defendants changed the building format and design three times, thereby forcing Jankoviches and their company Janko to restart the project with newer plans, resulting not only in major delays, but tens of thousands of dollars in extra architecture and engineering fees.

      Significantly, they allege in Janko's second amended complaint that at the very time that Yum! and/or Long John Silver's were forcing them to make these changes, Yum! had already decided that the LAW or combo-restaurant concept was a financial failure and had determined that the company would no longer develop or support any LAW restaurants. Plaintiffs allege that this withdrawl of support by Yum! led Yum! to repeatedly schedule and cancel franchise training for two Janko employees who traveled to South Carolina for training, only to have the training program cut short within three weeks after it began. Finally, in March of 2010, Yum! allegedly advised Janko for the first time that the company would no longer be supporting the LAW combo-restaurant concept due to its unprofitability and that the A&W portion of the

6

franchise agreement with Janko would be terminated. Yum! then allegedly advised Janko that it would proceed with building a single Long John Silver's restaurant. Due to the alleged delays, inaction and uncooperative behavior of Yum! and Long John Silver's, however, Janko never was able to complete the construction of the restaurant. Long John Silver's thereafter in January of 2011, terminated the franchise agreement supposedly because Janko did not timely proceed with the construction of the restaurant or complete the training program (DN 47, Second Amended Complaint, p. 8, ¶22).

Based on the above allegations, Janko claims that during the period from mid-2007, through March of 2010, Yum! and Long John Silver's encouraged and misled Janko to develop a LAW franchise restaurant even though they had already decided that they would no longer support any such new combined restaurant franchises. Janko claims that Defendants had no reasonable basis to represent the projected revenues and earnings made to Sandra Jankovich on Discovery Day or by Bisignano during his visit to Titusville, Florida, and that had Janko known the true financial picture, along with the ongoing efforts of Yum! to divest itself of Long John Silver's during the time that Janko was attempting to develop the LAW franchise, Janko would never have entered into or continued to pursue a franchise for such a combined unit for a Long John Silver's/A&W franchise. Janko maintains that in early 2011, Yum! successfully divested itself of Long John Silver's which was purchased by Defendant LJS Partners, LLC (DN 47, Second Amended Complaint, p. 9, ¶¶23-25).

Janko has sued the Defendants on claims of breach of contract, tortious interference with contract (Yum!), fraud and fraud in the inducement, breach of good faith and fair dealing, violation of the Florida Franchise Act and the Florida Unfair and Deceptive Trade Practices Act (DN 47, Second Amended Complaint, pp. 9-15, ¶¶26-73). Janko further alleges in its Second

7

Amended Complaint that LJS Partners, LLC, assumed the obligations and liabilities of Long John Silver's when it purchased the company from Yum! in early 2011, and therefore is liable to Janko for all claims and causes of action that Janko has asserted against Long John Silver's. (Id. ¶¶67-69).

The Court agrees that the information sought by both interrogatory no. 17 and 18 clearly is relevant to the claims raised in the Second Amended Complaint. Further, the supplemental responses by the Defendants are inadequate, as explained by Janko in its reply. Janko is entitled to know when Yum! decided to sell or divest its ownership interest in Long Long Silver's. In particular, Janko desires to know when Yum! placed Long John Silver's on the open market and why. The requested information obviously is relevant given the allegations of the Second Amended Complaint and claims contained therein.

The same is true with equal force for the date that Yum! began negotiations with LJS Partners, LLC or the owners of LJS to sell its interest in Long John Silver's. While Defendants have provided the date on which LJS Partners, LLC was organized, Sept. 20, 2011, such information sheds little light on when negotiations between LJS Partners and Yum! began over the sale of Long John Silver's. Janko is entitled to know when such discussions began between the owners of LJS Partners and Yum! Further, Janko also is entitled to those documents that reflect the so-called "strategic decisions" of Yum! to place its "focus on other brands" so that Janko can know when Yum! decided to place Long John Silver's on the open market, how it did so, and the reasons it provided to potential buyers for the sale of Long John Silver's. The Court agrees that all of these matters are highly relevant to the claims contained in the Second Amended Complaint that Yum! was actively involved in attempting to divest itself of Long John

8

Silver's, all the while it and its representative were encouraging the Jankoviches to purchase the LAW franchise based on allegedly misleading income predictions.

The Court further agrees that the objection of the Defendants based upon the alleged proprietary nature of such information or other confidentiality-related concerns in unpersuasive for a number of reasons. First, the parties have entered into a protective order and confidentiality agreement (DN 29, Agreed Protective Order). The order is entirely sufficient to address such concerns. Second, as Janko points out, the sale of Long John Silver's to JLS Partners, LLC, occurred now over two years ago so that a legitimate question can be raised about the proprietary status of such historical information at this point in time. Even assuming that the requested information is proprietary, the law simply does not favor the refusal of a party to disclose otherwise relevant information merely because of its proprietary status.

As explained in *Federal Open Market Committee of Federal Reserve System v. Merrill*, 443 U.S. 340, 362-363 (1979), which bears repetition in the present circumstances:

> As with most evidentiary and discovery privileges recognized by law, "there is no absolute privilege for trade secrets and similar confidential information." 8 C. Wright & A. Miller, *Federal Practice & Procedures*, §2043, p. 300 (1970); 4 J. Moore, *Federal Practice*, ¶26.60[4], p. 26-242 (1970). C.f. *United States v. Nixon*, 418 U.S. 683, 705-707 (1974). "The courts have not given trade secrets automatic and complete immunity against disclosure, but have in each case weighed their claim to privacy against the need for disclosure. Frequently, they have been afforded a limited protection." Advisory Committee's Notes on Fed.R.Civ.P. 26; 4 J. Moore, *Federal Practice*, ¶26.75, pp. 26-540 to 543 (1970).[FN24]
> ….
>
> [FN24] Actually, orders forbidding any disclosure of trade secrets or confidential commercial information are rare. More commonly, the trial court will enter a protective order restricting disclosure to counsel. *See, e.g., Chesa Int'l, Ltd v. Fashion Assoc., Inc.*, 425 F. Supp. 234 (S.D. N.Y. 1977); *Xerox Corp. v. IBM*, 64 F.R.D. 367 (S.D. N.Y. 1974); *Scovill Mfg Co. v. Sunbeam Corp.*, 61 F.R.D. 598 (Del. 1973); or to the parties, *see, e.g., Borden Co. v. Sylk*, 289 F.Supp. 847 (E.D. Pa. 1968); *United States v. Article of Drug Consisting of 30 Individually Cartoned Jars*, 43 F.R.D.

>181 (Del. 1967); *United States v. Standard Oil Co. (New Jersey)*, 23 F.R.D. 1 (S.D. N.Y. 1958).

*Merrill*, 443 U.S. at 362-363 (parallel citations omitted). *See also, Penthouse Int'l Ltd v. Playboy Enterprises, Inc.*, 663 F.2d 371, 391 (2nd Cir. 1981) ("A party is not entitled to any absolute privilege from disclosure of its relevant business records."); *Empire of Carolina, Inc. v. Mackle*, 108 F.R.D. 323, 326 (S.D. Fla. 1985) ("Under Rule 26(c)(7), there is no absolute privilege that immunizes trade secrets and similar confidential information from discovery. In order to resist discovery of such confidential information, a party must first establish that the information sought is indeed confidential and then demonstrate that its disclosure might be harmful. Once these requirements are met, the burden shifts to the other party to establish that discovery of the trade secrets and confidential information is relevant and necessary to the action."); *Zenith Radio Corp. v. Matsushita Elec. Indus. Corp. Ltd.*, 529 F. Supp. 866, 889-892 (E.D. Pa. 1981) (same).

Here, Defendants have not demonstrated how the disclosure of a long consummated sale such as the divestiture of Long John Silver's to LJS Partners, LLC, might be harmful to them. Such information, as the Court has held, clearly is relevant and necessary for Janko to pursue its claims. The parties have in place an agreed protective order that adequately protects whatever proprietary interests remain. The Court therefore is unpersuaded that mere confidentiality is a basis on which to deny a request for otherwise clearly relevant information.

The final objection of the Defendants, that compliance with the document request of the Plaintiff will be unduly burdensome, also is rejected for lack of sufficient specificity. In other words, the Court concludes that such an objection is a mere boilerplate objection that is insufficient to prevent compliance with the document request. In order to satisfy Rules 33 and

10

34, a party must set forth specifically the substance of its objection in sufficient fashion for the Court to meaningfully determine its merits.

For example, "the mere statement by a party that an interrogatory or request for production is overly broad, burdensome, oppressive and irrelevant is not adequate to voice a successful objection." *In re Heparin Products Liability Litigation*, 273 F.R.D. 399, 410-411 (N.D. Ohio 2011) (quoting *Oleson v. K-Mart Corp.*, 175 F.R.D. 560, 565 (D. Kan. 1997). Unexplained and unsupported "boilerplate" objections clearly are improper. *Duran v. Sisco Systems, Inc.*, 258 F.R.D. 375, 379-380 (C.D. Cal. 2009); *Burlington N. & Sante Fe R.R. Co. v. United States Dist. Ct. of Montana*, 408 F.3d 1142, 1149 (9th Cir.) ("We hold that boilerplate objections or blanket refusals inserted into a response to a Rule 34 request for production of documents are insufficient to assert a privilege."), *cert. denied*, 564 U.S. 939 (2005); *McLeod v. Alexander, Powell & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990) (objections that document requests were overly broad, burdensome, oppressive and irrelevant were insufficient to meet objecting party's burden of explaining why discovery requests were objectionable); *A. Farber & Partners, Inc.*, 234 F.R.D. at 188 ("General or boilerplate objections such as 'overly burdensome and harassing' are improper - - especially when a party fails to submit any evidentiary declarations supporting such objections."). In fact, the federal courts have noted that "there is abundant case law to the effect that boilerplate objections to Rule 34 document requests are inappropriate." *Frontier-Kemper Constructors, Inc. v. Elk Run Coal Co., Inc.*, 246 F.R.D. 522, 528-529 (S.D. W.Va. 2007) (noting that boilerplate objections in response to a Rule 34 request for production of documents "are widely rejected") (collection cases). Based on the above-cited authority, the Court rejects the Defendants' blanket objection that compliance with document request no. 3 would be unduly burdensome.

For the reasons set forth above, the motion of the Plaintiff to compel is **GRANTED** in full. Defendants shall have **30 days from that date of entry of this order** in which to provide the Plaintiff with supplemental discovery responses to interrogatory no. 17 and 18, and request for production of documents no. 3.

Cc: Counsel of Record